OPINION
Defendant-appellant, William L. Craig, appeals from the May 27, 1999 judgment of conviction of the Franklin County Court of Common Pleas finding him guilty of one count of robbery without a firearm specification, a second degree felony in violation of R.C. 2911.02, and one count of having a weapon under disability, a fifth degree felony in violation of R.C. 2923.13. For the reasons that follow, we affirm the judgment of the trial court.
On January 7, 1999, appellant was indicted by the Franklin County Grand Jury on a six-count indictment. Count 1 of the indictment charged appellant with one count of aggravated robbery as defined in R.C. 2911.01. Counts 2 and 3 of the indictment charged appellant with two counts of robbery as defined in R.C. 2911.02 (a felony of the second degree and a felony of the third degree respectively). Count 4 of the indictment charged appellant with one count of theft as defined by R.C. 2913.02. Count 5 of the indictment charged appellant with one count of kidnapping as defined in R.C. 2905.01. Count 6 of the indictment charged appellant with one count of having a weapon while under disability as defined in R.C. 2923.13. Counts 1 through 5 each contained a specification that appellant used a firearm to facilitate the offense. The charges all related to an incident in which it was alleged that appellant and two other men took tools from the trunk of an automobile belonging to William Pierrot.
At trial, Pierrot testified that, at approximately 10:00 a.m., on Saturday, September 19, 1998, appellant, Aubrey "Link" Hodge, Patricia Foster, and two other men were at 1174 East Rich Street, drinking beer on the front porch. William Pierrot arrived looking for Foster's son, Gary Coleman, to transport him to a work assignment. Pierrot did carpentry and other small jobs for a living.
Hodge approached Pierrot and engaged him in conversation about money Pierrot allegedly owed to Hodge's brother. Although he had never seen appellant before, Pierrot testified that appellant interjected himself into the conversation and tried to make the other people believe that Pierrot owed appellant money as well. Pierrot tried to explain that he had not been paid for the job because it was not yet finished. He offered to take Hodge to the customer's house to prove that he had not been paid.
Pierrot drove appellant and Hodge to the customer's house. Hodge sat in the front passenger seat, and appellant sat in the back. Pierrot testified that as he drove, appellant put a three to four inch automatic pistol to the back of Pierrot's head and threatened to shoot if Pierrot "tried to stop the police." (Tr. 24.) Pierrot testified that, when they arrived at the customer's house, appellant placed the gun in the back waistband of his pants and followed Pierrot to the customer's door. The customer was not home.
Hodge then asked Pierrot to drive them back to the Rich Street house, and Pierrot complied. When they arrived, appellant demanded money. Pierrot opened his wallet to show them that he had no money. Appellant then grabbed the wallet, ripped the wallet, removed the spare key to Pierrot's car from the wallet, and opened the trunk. Appellant then started taking tools from the trunk and dumping them on the ground. Appellant, Hodge, and a third unidentified man took the tools.
Pierrot eventually learned appellant's name and identified him from a photo array. Pierrot also made a positive identification of Hodge from a photo array.
Hodge, who pleaded guilty to robbery as a result of the same incident and was serving a sentence of seven years, testified next for the state. Hodge testified that appellant used a gun to threaten Pierrot, beat on Pierrot's car, and, along with Hodge, took Pierrot's tools from the trunk. Hodge claimed that appellant gave him some of the property from the trunk but that Hodge did not take it. Hodge stated that he pleaded guilty to the robbery because he was there and did not stop it.
Patricia Foster testified for the defense. Foster testified that Pierrot came to her house looking for her son. Pierrot then left by himself and returned about thirty minutes later, at which time he encountered Hodge. An argument ensued, in which Hodge took Pierrot's wallet and keys and opened the trunk. Foster stated that she did not see appellant take any tools. Rather, Hodge and another man known as "Cornbread" took the tools from the trunk. Foster testified that the police did not talk to her. On the other hand, Officer Troy Palmer testified that he questioned a female witness who told him that she witnessed nothing.
The jury found appellant guilty of Count 2 of the indictment, robbery, without specification, and Count 6 of the indictment, having a weapon under a disability. The trial court sentenced appellant to concurrent terms of imprisonment of seven years as to Count 2 of the indictment and eleven months as to Count 6 of the indictment.
Appellant has timely appealed, asserting a single assignment of error as follows:
 Appellant's rights under Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution were violated and Appellant was thereby improperly denied a Crim.R. 29 acquittal when his convictions were not supported by sufficient evidence and against the manifest weight of the evidence.
Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.Jenks, supra, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, supra, at 387.
Appellant's sufficiency argument can be summarized as follows. First, appellant contends that the testimony from the victim was not clear as to who actually took the goods. The transcript reflects that the victim, Mr. Pierrot, testified that "he" grabbed the wallet and took the tools. Second, appellant argues there was no testimony that appellant had a deadly weapon when the alleged robbery occurred. Third, appellant claims neither Pierrot nor any of the state's witnesses testified that appellant attempted to inflict or threatened to inflict physical harm on Mr. Pierrot when the tools were taken.
R.C. 2911.02, in pertinent part, defines "robbery" as follows:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control;
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
 (3) Use or threaten the immediate use of force against another.
 (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
In the instant case, appellant was found guilty of Count 2 of the indictment, having a deadly weapon on or about his person or under his control, or inflicting, attempting to inflict, or threatening to inflict physical harm on another. Both Pierrot and Hodge identified appellant as the man who pulled a pistol on Pierrot. (Tr. 25, 27, 119.) Pierrot testified that appellant then put the pistol in the back waistband of his pants. (Tr. 26.) Both Hodge and Pierrot specifically identified appellant by name as the person who took the tools out of the trunk of the car. (Tr. 63, 109.) Viewing the evidence in a light most favorable to the prosecution, a rational jury could have found that appellant had a deadly weapon on or about his person or under his control when he took Pierrot's tools. As such, there was sufficient evidence that appellant was guilty of robbery as defined in R.C.2911.02(A)(1). This view of the evidence is also consistent with the jury finding appellant guilty of having a weapon under disability and robbery, without the firearm specification. To find appellant guilty of the firearm specification, the jury had to find not only that appellant had a firearm on or about his person or under his control while committing the robbery but, also, had to find that appellant displayed, brandished, indicated he possessed, or used the firearm to facilitate the offense. R.C.2941.145. There was no testimony at trial that appellant displayed, brandished, indicated he possessed, or used the firearm.
Appellant has also argued that his convictions were against the manifest weight of the evidence. Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, supra, at 387. In so doing, the court of appeals sits as a "thirteenth juror" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v.Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v.Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins,supra, at 387.
As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v.Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213,217 ("[i]t is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See State v.Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render the verdict against the manifest weight).
Here, Pierrot's testimony was for the most part corroborated by Hodge's testimony. It was also reasonable for the jury to reject Foster's testimony in light of her earlier statement to the police that she witnessed nothing.
Based on the foregoing, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
KENNEDY and DESHLER, JJ., concur.