OPINION
Defendant-appellant, Darrell Lamont Bell, appeals from the June 8, 2000 judgment of conviction of the Franklin County Court of Common Pleas finding him guilty of murder, attempted murder, and having a weapon while under disability. For the reasons that follow, we affirm the judgment of the trial court.
On the evening of June 10, 1999, Mark Newton and his friend Earl Edmonds were relaxing at the apartment of Edmonds' girlfriend, Alicia Franklin. Newton and Edmonds were in the habit of watching out for each other, as they were best friends and admitted drug dealers. Edmonds' cousins, Nyomi and Shay Conley, were also at the apartment. Some time after 1:00 a.m., on June 11th, the group decided to go to a bar known as Frank's Place. The group took two cars; Newton and Nyomi Conley rode in one car, and the others drove separately. Nyomi parked in front of the bar, and the others parked on the side of the bar in the parking lot. Newton took a gun with him into the bar.
Once inside, the group ordered drinks. Newton ordered a double shot of gin and a beer. He testified that he has a very high tolerance for alcohol. The bar was not crowded, and Newton noticed the owner, Sylvester, and Ronald Dawson playing pool in the back of the bar. Newton went back to speak with them and exchanged a handshake and a hug before rejoining his group.
Newton observed Ronald Dawson use his cell phone, and approximately five to ten minutes later, appellant and Shawn Collins entered the bar. When the two came in, Newton described greeting appellant as follows:
 A. Shawn kept on walking. Me and Darrell, we gave a hug, asked how my mom was doing and asked him how his mom was doing. Kept on walking." [Tr. Vol. I, at 105.]
Appellant, Collins, and Dawson then had a conversation. Upon observing this, Newton was uncomfortable and told his friend Edmonds "to keep his eyes opened." (Tr. Vol. I, at 104, 106, 110.) At some point, Newton ordered and consumed a second round of drinks. He got up to use the restroom, and Collins quickly followed him and started coming in the door. Newton pulled his gun out and showed it to Collins who left and returned to the bar. A few minutes later, appellant and Collins left the bar.
Newton and his group finished their drinks and left the bar. Newton and Edmonds felt uneasy. Newton got his gun out and walked Edmonds to his car. Newton told Nyomi Conley to start the car, after which he got inside on the passenger side. Newton flipped the visor down and looked in the visor mirror. He saw someone at the back of the car coming around to the passenger side. The person was wearing a black "hoody." The person had something in his hand. On cross-examination, Newton stated it was a gun. When the person got to the passenger door, Newton saw it was appellant. Appellant said something like, "you shouldn't have something." Newton lifted his gun from his lap and fired a shot, but apparently missed. Newton then testified:
 He ran around. I seen him run. He ran so fast. I came back to the other side. Looked at the other side. I seen Shawn [Collins] and they just started firing. I tried to shoot but it jammed. It wouldn't shoot. [Tr. Vol. I, at 118.]
Newton laid on top of Nyomi Conley, but she had already been hit. Collins continued to fire as Newton tried to put the car in gear. Newton was hit nine times. He had wounds in his chest, arm, shoulder, and face. Newton opened the passenger door, dropped his gun on the seat, and ran back into the bar.
Just after 2:30 a.m., police arrived. One of the officers followed a trail of blood into the bar and found Newton lying behind the bar. Newton was transported to Grant Hospital where he lay in and out of a coma for approximately three weeks. He identified appellant, Shawn Collins, and Ronald Dawson as being involved in the shooting. Police showed photo arrays to Newton who identified appellant and Shawn Collins as the shooters. Detective Viduya wrote down that Newton stated Shawn Collins was the person who shot first. At trial, Newton testified that appellant shot first.
On October 12, 1999, appellant was named in a five-count indictment by the Franklin County Grand Jury. Count 1 of the indictment charged appellant with the aggravated murder of Nyomi Conley in violation of R.C.2903.01. Count 2 of the indictment charged him with the attempted aggravated murder of Mark Newton in violation of R.C. 2903.01. Counts 3 and 5 of the indictment charged him with having a weapon while under disability in violation of R.C. 2923.13, and Count 4 of the indictment charged him with discharging a firearm at or into an occupied structure in violation of R.C. 2923.161. The aggravated murder count contained two specifications: one, a firearm specification under R.C. 2941.145; and two, that the offense was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons under R.C.2929.04(A)(5). The attempted murder count and the improperly discharging count also contained firearm specifications under R.C. 2941.145.
Appellant was tried separately from his co-defendant, Shawn Collins. Appellant elected to have the aggravated murder and attempted aggravated murder counts tried to a jury. The improperly discharging a firearm count and one of the weapon under disability counts were severed, and appellant elected to have the remaining weapon under disability count tried to the bench. After a two-day trial, appellant was found guilty of the lesser-included offenses of murder and attempted murder. The jury found none of the specifications, but the trial court found appellant guilty of the weapon under disability count. Appellant was sentenced to a term of imprisonment of fifteen years to life on the murder count, ten years for attempted murder, and twelve months for the weapon under disability count, with all sentences to be served consecutively to one another.
On appeal, appellant assigns the following as error:
 The evidence was insufficient to support the appellant's convictions and the convictions were against the manifest weight of the evidence.
Appellant contends that the evidence does not support a finding that he was present when Conley was murdered and Newton was shot. Appellant argues that no physical evidence linked him to the scene and, furthermore, that the state's primary witness, Mark Newton, gave testimony that was so contradictory, incredible, self-serving, and unworthy of belief that appellant's convictions were not supported by sufficient evidence. At trial, Newton claimed that he observed, in the visor mirror, a person sneaking up behind the car; however, when police arrived after the shooting, the visor was flipped up, and material hanging from the roof would have obstructed the view out the back.
Appellant also claims that Newton contradicted himself concerning whether the person sneaking up behind the car had a gun in his hand. On direct examination, Newton indicated that he could not tell if the person initially approaching had a gun. On cross-examination, however, Newton testified that the person who approached the car from behind not only had a gun, but also fired before the other shooter fired.
At a prior hearing, Newton testified that he could identify the individual when viewing him in the visor mirror. At trial in this case, Newton stated that he could not tell the identity of the person by looking through the visor mirror. Not until the person was standing at the passenger window did Newton recognize the man as appellant.
Newton testified that, when appellant approached the passenger side of the car, Newton fired at him. Yet no .380 caliber shell casings from Newton's gun were found at the scene.
The state counters that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Specifically, the state argues that, even if the evidence showed that Shawn Collins fired the shots that killed Nyomi Conley and gravely wounded Newton, the evidence supported a determination that appellant was guilty under a theory of complicity. Based on our review of the evidence, we agree.
The appropriate question under the sufficiency of the evidence standard is whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, paragraph two of the syllabus. "[T]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, supra, at 273.
Viewing the evidence in favor of the state, the evidence was sufficient to convict appellant of murder and attempted murder. In this case, several witnesses placed appellant at the bar with Shawn Collins five to ten minutes after Ronald Dawson used a cell phone. Appellant and Collins left the bar shortly before Newton and the others left. Newton unequivocally identified appellant as the man dressed in black that approached the car on the passenger side and Shawn Collins as the man who approached on the driver's side. The evidence pointed to Collins as the sole or primary shooter because all the shell casings that were recovered came from the same gun and were found on the driver's side of the car. Whether appellant shot at the victims or not, he acted in concert with Collins, sneaking up on the victims and distracting Newton while Collins opened fire. Under these facts, appellant could still be found guilty under a theory of complicity.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, supra, at 387. In so doing, the court of appeals sits as a "thirteenth juror" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387.
A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, unreported. Credibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case. In re Fisher (June 25, 1998), Franklin App. No. 97APF10-1356, unreported. As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported. It was within the province of the trier of fact to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("[i]t is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See, also, State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
Here, any inconsistencies raised by appellant do not rise to the level of an exceptional case where the evidence weighs heavily against a conviction. Regardless of whether Newton could identify appellant while looking through the visor mirror, Newton saw appellant when he approached the passenger side of the car:
 Q. Is the front of the bar lit up well enough that you could see the people, the person who came up on your side of the car?
A. Yes.
Q. Did you have any trouble seeing that person?
A. No.
Q. The lighting was sufficient?
A. Yes.
Q. Had you ever seen that person before?
A. Yes.
Q. Who was it?
A. Darrell Bell.
Q. How sure are you?
A. 110 percent.
Q. Any doubt in your mind that that was Darrell Bell?
A. No doubt.
 Q. Same person you had seen inside the bar just minutes before?
A. Yes. [Tr. Vol. I, at 116.]
Appellant also claims that his conviction for having a weapon under disability is not supported by the evidence. Appellant points to the fact that the jury did not find any of the firearm specifications, and that Newton gave inconsistent testimony as to whether he saw a gun in appellant's hand.
There was evidence in the record from which the trial court, as the trier of fact on the weapon under disability count, could find that appellant possessed a firearm. The trial court was in the best position to weigh the credibility of this testimony, and we find nothing in the record that suggests Newton was unbelievable as a witness. The assignment of error is not well-taken.
Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
DESHLER and KENNEDY, JJ., concur.