OPINION
Defendant-appellant, Shawn R. Collins, appeals from the May 15, 2000 judgment of conviction of the Franklin County Court of Common Pleas finding him guilty of aggravated murder, attempted aggravated murder, and having a weapon while under disability, and sentencing him to life in prison with no possibility of parole. For the reasons that follow, we affirm the judgment of the trial court.
The charges against appellant arose out of the shooting of Nyomi Conley and Mark Newton. In the early morning hours of June 11, 1999, two armed assailants, identified as appellant and Darrell Bell, opened fire into a parked car in which Conley and Newton were sitting. Conley was shot once in the head and died immediately. Newton was shot multiple times, but survived the attack.
On the evening before the shooting, Mark Newton and his friend Earl Edmonds had been relaxing at the apartment of Edmonds' girlfriend, Ellisha Franklin. Newton and Edmonds were in the habit of watching out for each other, as they were best friends and admitted drug dealers. Edmonds' cousins, Nyomi and Shay Conley, were also at the apartment. Sometime after 1:00 a.m., on June 11th, the group decided to go to a bar known as Frank's Place. The group took two cars; Newton and Nyomi Conley rode in one car, and the others drove separately. Nyomi parked in front of the bar, and the others parked on the side of the bar in the parking lot. Newton took a gun with him into the bar.
Once inside, the group ordered drinks. Newton and Edmonds noticed Ronald Dawson, the purported leader of a gang known as the X-Clan, near some pool tables at the back of the bar. Newton walked back to talk to Dawson and Sylvester Watson, the son of the owner of the bar. A few minutes later, Newton noticed Dawson using a cell phone. Five or ten minutes later, Darrell Bell and appellant entered the bar and walked back to where Dawson was standing.
Newton felt "funny" about the presence of appellant and Bell. Both Newton and Edmonds were familiar with Dawson, Bell, and appellant. A short time later, Newton went to the restroom, and appellant followed him in. Newton pulled his gun out and showed it to appellant, and appellant turned around and left. Bell and appellant left the bar about fifteen minutes after they had arrived. Newton and his friends finished their second round of drinks and left the bar about five minutes later.
Newton sent Nyomi Conley to the car to start it, and he and Edmonds talked outside the bar for a few minutes. Newton walked the other three to the parking lot on the side of the bar, then returned to Conley's car and got in on the passenger side.
Newton flipped the visor down and looked behind him in the vanity mirror. He saw Darrell Bell come around the back of the car to the passenger's side. Bell was wearing something "going around his face," but Newton testified that he could see his whole face. Newton fired a shot at Bell, who stepped back. Newton then turned to the driver's side of the car where he heard shots and saw the barrel of a gun and appellant. Appellant was wearing a "hoodie," a hooded sweatshirt with drawstrings, but Newton could see his face and was sure that the person was appellant. Newton's gun jammed. Newton lay on top of Nyomi Conley, but she had already been hit. Collins continued to fire as Newton tried to put the car in gear. Newton was then shot multiple times and recalled that the last shot that hit him shot him through the jaw. After he was shot, Newton got out of the car and walked into the bar where he collapsed.
Appellant was indicted on charges of aggravated murder, in violation of R.C. 2903.01, attempted aggravated murder, in violation of R.C. 2903.01, and having a weapon while under disability, in violation of R.C. 2923.13. The aggravated murder count contained a death penalty specification that the offense was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons. The aggravated murder and attempted aggravated murder counts also contained firearm specifications.
Appellant elected to have the aggravated murder and attempted aggravated murder counts tried to a jury and the weapon under disability count tried to the bench. On April 10, 2000, the jury returned a verdict of guilty on the aggravated murder with the death penalty specification and attempted aggravated murder counts. The trial court found appellant guilty of the weapon under a disability charge.
The case proceeded to a hearing on the issue of mitigation or punishment on May 1, 2000. On May 3, 2000, the jury returned a verdict finding that the aggravating circumstances did not outweigh the mitigating factors. By judgment entry filed May 15, 2000, the trial court imposed a sentence of life imprisonment without parole on the aggravated murder count, ten years on the attempted aggravated murder count, twelve months on the weapon under a disability count, and an additional three years on the firearm specification, all terms to be served consecutively.
On appeal, appellant has raised the following four assignments of error:
First Assignment of Error
 The trial court committed reversible error and deprived Appellant of due process of law by imposing a sentence of life without possibility of parole when the aggravating circumstances alleged in the indictment had not been established by proof beyond a reasonable doubt.
Second Assignment of Error
 Appellant was denied due process of law by the use of inflammatory and unfairly prejudicial testimony regarding gang affiliation.
Third Assignment of Error
 The trial court committed prejudicial error by refusing to permit the defense to cross- examine the chief prosecuting witness through the use of a prior-inconsistent statement.
Fourth Assignment of Error
 The judgment of the trial court was contrary to the weight of the evidence.
In his first assignment of error, appellant argues that the evidence was insufficient to support a finding of specific intent to kill two or more persons as required to find in favor of the state on the death penalty specification. Appellant contends that, at best, the state proved that appellant intended to kill Mark Newton but that Nyomi Conley's death was merely the unintended result of the attack on Newton. Thus, appellant argues, the shooter had but one purpose to kill one person, Mark Newton. In support, appellant points to the state's closing argument in which the prosecutor stated as follows:
 Now you will also receive an instruction, because on Nyomi Conley, the State has never indicated that we thought she was the primary target. They were trying to kill Mark Newton. She was killed by accident. That wasn't the intended cause, but there is this doctrine called transferred intent, and you will have a specific instruction. [Tr. Vol. VI, at 1004-1005.]
While appellant does not dispute the application of the transferred intent doctrine to the underlying aggravated murder count, he does question its application to the multiple victim death penalty specification. Appellant acknowledges that the Ohio Supreme Court has applied the doctrine of transferred intent to aggravated murder cases, but appellant contends that the Ohio Supreme Court has never specifically addressed the issue of whether the doctrine of transferred intent applies to the multiple victim specification contained in R.C. 2929.04(A)(5). Absent a finding of the specification contained in R.C. 2929.04(A)(5), the trial court could not impose a sentence of life imprisonment without parole.
Appellant is correct that the state's theory at trial was that appellant and Bell were attempting to kill Newton and killed Conley in the process. But the arguments of counsel are not evidence and, based on our review of the record, there was sufficient evidence presented to the jury from which it could find that the murder of Conley was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons.
R.C. 2903.01(A), defining the crime of aggravated murder, reads in pertinent part:
 (A) No person shall purposely, and with prior calculation and design, cause the death of another * * *.
R.C. 2929.04(A)(5) provides in pertinent part:
 (A) Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:
* * *
 (5) * * * [T]he offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.
Purpose is defined in R.C. 2901.22(A) as follows:
 (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
The purpose required here is to cause the death of two or more persons. The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's action is to produce death. State v. Robinson (1954),161 Ohio St. 213, paragraph five of the syllabus; State v. Edwards (1985), 26 Ohio App.3d 199, 200. The act of pointing a firearm and firing it in the direction of another human being is an act in which death is a natural and probable consequence. State v. Brown (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported.
For example, in State v. Brooks (Jan. 10, 1991), Cuyahoga App. No. 57034, unreported, the defendant was a participant in a drive-by shooting at a crowded park. Approximately forty to eighty people were present at the time of the shootings. The defendant was one of four men in a stolen van wearing jogging suits with hooded sweatshirts. Upon entering the park, the defendant spotted his intended victim, a rival drug dealer, and opened fire with a shotgun. Witnesses saw a van drive by with two or three guns sticking out the windows. The shooting went on for about one minute. When the van was recovered, spent shotgun shells were found on the floor of the van. As a result of the shooting, two people were wounded, and a third person was killed. The intended victim was not hit. The Cuyahoga County Court of Appeals found that the trial court correctly charged the jury with the specification contained in R.C.2929.04(A)(5), as the intent to kill or attempt to kill two or more persons was sufficiently established as the evidence revealed that the natural and probable consequence of the defendant's wrongful act was his intention to kill or attempt to kill two or more persons. In coming to that conclusion, the court considered evidence that more than one weapon was used, a 12-gauge shotgun and a .38 revolver; that several shots were fired; that the shootings occurred during a hot summer evening in a park known to attract many people; that there were between forty and eighty people at the park on the evening in question; and, that the defendant opened fire in the crowded park.
In the instant case, there was evidence from which the jury could find that appellant and Bell left the bar and waited for Newton's group to leave the bar. Appellant and Bell presumably watched and waited until the others proceeded to their car and Conley and Newton were seated in their car. Appellant and Bell then approached the car on opposite sides and opened fire. Appellant stood right by the driver's window and fired a bullet into Conley's head. This was sufficient evidence from which the jury could find that appellant's killing of Nyomi Conley was purposeful pursuant to R.C. 2901.22(A) and 2929.04(A)(5). The first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that he was unfairly prejudiced by testimony regarding appellant's alleged affiliation with the X-Clan. Over objection, the state introduced testimony that appellant and Darrell Bell were members of the X-Clan. The trial court sustained a hearsay objection to testimony by a witness stating that he had heard that Ronald Dawson was the leader of the X-Clan, but later, without objection, another witness testified that Dawson was the leader of the X-Clan and that the shooting took place in an X-Clan neighborhood.
Appellant argues the testimony should have been excluded under Evid.R. 403(A) and 404(B) as unduly prejudicial and to show that appellant acted in conformity with the violent propensities of gang members. Although the testimony was clearly unfavorable to appellant, we cannot say that the probative value of the statement was substantially outweighed by the danger of unfair prejudice.
Generally, any evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). Of course, evidence of membership in a criminal gang is clearly inadmissible if its only purpose is to establish that the defendant acted in conformity with his bad character or to demonstrate that he had a propensity to commit a crime. Evid.R. 404; State v. Robb (2000), 88 Ohio St.3d 59, 69.
Here, the evidence was admissible under Evid.R. 404(B) to show a motive for the crime, especially in light of testimony that, prior to the shooting, Newton and Dawson shook hands and exchanged a little hug in the bar. See State v. Dixon (Dec. 5, 2000), Franklin App. No. 98AP-626, unreported (gang evidence relevant to show motive for shooting); State v. Johnson (May 30, 2000), Franklin App. No. 99AP-753, (gang evidence properly before jury as motive for defendant's actions); see, also, State v. Sealey (Dec. 12, 2000), Franklin App. No. 99AP-1405, unreported (gang affiliation statements arguably were improper as they did not establish motive or any other permissible purpose under Evid.R. 404[B] regarding defendant's participation in murder). Moreover, appellant did not object at trial to the admissibility of the evidence as unfairly prejudicial and, accordingly, we review this assignment of error under a plain error analysis. State v. Moreland (1990), 50 Ohio St.3d 58, 62. As the evidence was admissible to show motive, we find no plain error in the admission of the evidence. The second assignment of error is not well-taken.
In his third assignment of error, appellant argues the trial court erred in excluding a tape-recorded statement of the state's key witness, Mark Newton. According to appellant, Newton made statements to police after the shooting that the defense contended were inconsistent with Newton's testimony at trial. The trial court did not allow the tape to be played to the jury because it was unintelligible. At the time of the recording, Newton was in the hospital recovering from a gunshot wound to the face and heavily medicated.
The portion of the tape was played several times outside the presence of the jury in an attempt to refresh the witness's recollection. Newton stated that he could not understand himself on the tape. The transcript also reflects that the court reporter could not understand what was being said on the tape, even after repeated playings. Only after defense counsel repeated numerous times what he thought the tape said did the court reporter even transcribe that portion of the tape.[1]
Accordingly, the trial court did not abuse its discretion in refusing to admit the tape. The third assignment of error is not well-taken.
In his fourth assignment of error, appellant contends that the judgment of the trial court was against the manifest weight of the evidence. Appellant argues that the only evidence linking appellant to the shooting was the testimony of Mark Newton. First and foremost, appellant contends that Newton's testimony was inconsistent and, therefore, inherently unreliable. Appellant points to Newton's testimony that he could see the whole face of the shooter on the driver's side of the car, but had earlier told a detective that, when he looked over to the driver's side of the car, he saw the barrel of a gun pointing at him.
In addition, appellant contends that Newton's testimony was unreliable because he and appellant had been in a dispute over a woman; because appellant's toxicology screen at the hospital was positive for cocaine and marijuana; because Newton has felony drug convictions; and because the prosecution dismissed a weapons charge against Newton after he testified.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. In so doing, the court of appeals sits as a "thirteenth juror" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172,175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, supra, at 387.
A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, unreported. Credibility determinations on conflicting testimony are issues primarily reserved to the trier of fact to be second-guessed only in the most exceptional case. In re Fisher (June 25, 1998), Franklin App. No. 97APF10-1356, unreported. As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported. It was within the province of the trier of fact to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("[i]t is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See, also, State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
The state responds that the record does not support appellant's assertions regarding the credibility of Mark Newton. Apparently, Newton's dispute with Collins was ten years prior to the shooting, and Newton testified that he had no immediate concerns regarding Bell, Dawson, or appellant. According to the trauma surgeon who treated Newton at the hospital, the ingestion of cocaine and marijuana could have occurred some days prior to the shooting, and he could not conclude that Newton was under the influence of cocaine and marijuana at the time of the shooting. The state also points out that Newton identified appellant and Bell as the shooters from the time of his initial contact with detectives, and not just in response to having the weapon under disability charge dismissed.
Here, any inconsistencies raised by appellant do not rise to the level of an exceptional case where the evidence weighs heavily against a conviction. Newton unequivocally identified appellant and Bell as the shooters. Minor inconsistencies in his account do not render his essential story unbelievable. The fourth assignment of error is not well-taken.
Based on the foregoing, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _________________ LAZARUS, J.
TYACK and KENNEDY, JJ., concur.
[1] We have also listened to the tape and likewise find Newton's remarks unintelligible.