OPINION
Defendant-appellant, Eric N. Gibbs, appeals from the October 26, 2000 judgment of conviction of the Franklin County Court of Common Pleas finding him guilty of two counts of kidnapping, the aggravated murder of Alex Rivera, the attempted murder of Chad Damron, and sentencing him to life in prison without the possibility of parole plus twenty-three years. For the reasons that follow, we affirm the judgment of the trial court.
In January 2000, appellant was nineteen years old and his girlfriend, Nikki Marriott, was seventeen years old and pregnant with appellant's child. During the course of their relationship, the couple argued and broke up several times. Before Nikki had become involved with appellant, she had a friendship with the decedent, Alex Rivera. Nikki admitted having sexual relations with Alex on a number of occasions, but she characterized their relationship as friends, not boyfriend and girlfriend. When Nikki and appellant fought, Nikki turned to Alex for his friendship and conversation, and appellant would become jealous.
Shortly before January 15, 2000, in the course of one of their arguments, appellant took a pager that belonged to Nikki. Alex tried to reach Nikki on the pager that appellant now had. Appellant telephoned Alex and the two exchanged words.
On the night of January 15, 2000, Nikki and a friend, Patrice Hicks, visited a friend of Nikki's, Lana Cocher, at a nursing home in Grove City. While at the nursing home, appellant and Nikki spoke on the telephone. Cocher overheard part of the conversation on another extension and testified that Nikki's voice was loud and heated. Appellant was angry about Nikki speaking to Alex and accused Nikki of sleeping with Alex. Appellant wanted to fight with Alex. According to Nikki's testimony in court, appellant threatened to put Nikki and her friends into wheelchairs if Nikki did not arrange a meeting between appellant and Alex. On cross-examination, Nikki admitted never telling police, prosecutors, or defense investigators about these alleged threats. Nikki also admitted lying to the defense investigator and not telling the police or prosecution the whole truth.
Nikki testified that appellant told her to tell Alex that there was a party at the Woodbury apartment complex. Nikki had Alex meet her at the nursing home. Alex and a friend, Chad Damron, left a club and showed up at the nursing home. Nikki told Alex they were going to a party and, in the early morning hours of January 16, 2000, she had Alex and Chad follow her and Patrice to the Woodbury apartments in a separate car.
Meanwhile, appellant telephoned his friend, Demetri Jackson, who lived at the Woodbury apartment complex. Appellant and two other men showed up at Demetri's apartment, where appellant retrieved a handgun. Appellant appeared to be in a hurry and told one of the occupants of the apartment that "he had to meet a deadline." (Tr. 237.) About five or ten minutes after appellant left, one of the occupants of the apartment heard a gunshot.
When Nikki and Patrice arrived at the apartment complex, they parked and began walking toward the building. Alex and Chad followed about five feet behind. Appellant, wearing a white toboggan hat, was standing where the sidewalk came to a T. Appellant motioned for Nikki and Patrice to keep walking. According to Chad Damron, appellant then called out to Alex, "you want to talk shit, now, you hoe — or something in that manner." (Tr. 484.) Appellant then fired several shots, and one struck Alex in the neck. Nikki, Patrice, and Chad all took off running.
At some point, Chad stopped running and began walking. At that point, he heard the same voice yell out, "you want to walk?" and more shots were fired. (Tr. 485.) Chad began running again and eventually hid. Days later, Chad discovered an unexplained hole in the leather jacket he was wearing that night. The prosecution argued in closing argument that the hole was a bullet hole.
Thane Hicks, who lived nearby, heard popping noises that he at first thought had been made by his cat jumping on the counter. He decided to investigate and looked outside where he saw a tall slender man wearing a light colored stocking cap and a jacket. The man was running and appeared to be pulling the slide back on a semiautomatic pistol. Hicks gave a statement to police and later walked the area where he had seen the man running and found a spent shell casing in the area.
Appellant went back to Demetri's apartment and went immediately to the bathroom where he washed his hands. Some time before his arrest, Demetri's girlfriend, Latisha Britton, asked appellant why he did it, and appellant said he didn't know. Latisha asked appellant if he felt bad, and appellant said he did not regret it, but Latisha observed that appellant seemed upset and that he did feel bad.
On January 19, 2000, appellant went to Demetri's apartment. Demetri said to appellant, "I bet you wish you didn't do it now," and appellant replied that he wished he did not. (Tr. 250.) Shortly after that conversation, the police arrived at the apartment and arrested appellant.
On January 28, 2000, the Franklin County Grand Jury indicted appellant on two counts of kidnapping, two counts of aggravated murder, and one count of attempted murder. All the charges carried firearm specifications. The aggravated murder charges carried additional specifications that the murder was committed with prior calculation and design, was committed in the course of a kidnapping, and was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons.
The case was tried to a jury, which returned guilty verdicts on all counts. The mitigation phase of the trial then took place with the jury concluding that appellant should be sentenced to life imprisonment without the possibility of parole on both charges of aggravated murder.
The trial court sentenced appellant to life without parole as to Counts 3 and 4 (aggravated murder), ten years as to Counts 1 and 2 (kidnapping), ten years as to Count 5 (attempted murder), and an additional three years for use of a firearm. Counts 1 and 2 ran concurrent to each other, but consecutive to Count 5 and to the three years imprisonment for the firearm specification. Counts 1, 2, and 5 ran consecutive to Counts 3 and 4 for a total aggregate sentence of life without the possibility of parole plus twenty-three years.
On appeal, appellant has assigned the following as error:
ASSIGNMENT OF ERROR I
 APPELLANT'S CONVICTIONS FOR AGGRAVATED MURDER AND KIDNAPPING WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR II THE TRIAL COURT COMMITS REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION FOR A JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF MURDER, WHEN FACTS PRESENTED AT TRIAL WERE SUCH THAT REASONABLE JURORS MIGHT FIND APPELLANT GUILTY OF MURDER, INSTEAD OF AGGRAVATED MURDER.
In his first assignment of error, appellant argues that the evidence against him was insufficient to establish either aggravated murder or kidnapping. Appellant also argues that his conviction was against the manifest weight of the evidence because the prosecution's chief witness was shown to be lacking in credibility.
Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. See Thompkins, at 387.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983], 20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995), 105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported, at 2058. It was within the province of the trier of fact to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.") See also State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
Here, appellant acknowledges that there is no doubt that he killed Alex Rivera. Appellant contends, however, that, even assuming Nikki Marriott was telling the truth, there was a lack of evidence that appellant planned to kill Alex or that he used Nikki Marriott to lure Alex to the Woodbury apartments to be killed. Appellant argues the evidence does not indicate that appellant had any intention other than to scare or maim Alex and to scare Chad Damron away from the scene. We disagree.
The Supreme Court of Ohio has stated previously that it is not possible to establish a "bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design.'" State v. Taylor (1997), 78 Ohio St.3d 15, 20. There is no single set of factors to be mechanically applied when determining whether prior calculation and design is present. "[E]ach case turns on the particular facts and evidence presented at trial." Id. See, also, State v. Goodwin (1999),84 Ohio St.3d 331, 344. Looking at the evidence in a light most favorable to the prosecution, it is clear that a rational jury could have found that appellant convinced or threatened Nikki Marriott into luring Alex and Chad to the Woodbury apartments under the pretext of going to a party. After arranging to have the victims brought to the Woodbury apartments, appellant, knowing he had a short window of opportunity, hurriedly retrieved a firearm from his friend's apartment, telling one of the occupants that he "had to meet a deadline." Now armed, he lay in wait near the parking lot where he knew his girlfriend was bringing the victims. As soon as the girls were safely past, appellant called out and almost immediately opened fire, shooting several times and striking Alex Rivera in the neck. Appellant then ran after the second intended victim and, after ejecting a spent shell casing from his weapon, he fired additional shots at Chad Damron. Shooting at a person who has already run away is further evidence of intent to kill and not merely trying to scare someone from the scene as appellant argues.
In State v. Cotton (1978), 56 Ohio St.2d 8, the Supreme Court of Ohio held that, "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." Id. at paragraph three of the syllabus. Here, the facts presented at trial are sufficient to show prior calculation and design, kidnapping by deception, and an attempt to kill two people.
With respect to the manifest weight argument, appellant's argument centers on the credibility, or lack thereof, of appellant's girlfriend, Nikki Marriott. Appellant claims that Nikki lied at trial because, prior to trial, she had not told anyone that appellant threatened her into bringing Alex to the Woodbury apartment complex. On cross-examination, Nikki admitted that she did not tell the police, prosecutors, or defense about the alleged threats. Defense counsel also tried to impeach Nikki about a statement she allegedly made to a defense investigator that Alex was going to bring his friends to fight with Eric that night. However, Nikki never deviated from her direct testimony that appellant initiated the plan to tell Alex that there was a party at the Woodbury apartments, that Alex and Chad believed that they were going to a party, and that they did not know that appellant was going to be there. Chad Damron's testimony was consistent with Nikki's account. The jury did not lose its way in finding that appellant purposely caused the death of Alex Rivera while committing the offense of kidnapping.
Appellant also claims that, although appellant was jealous of Alex, there was no evidence that appellant wanted to kill Alex prior to the moment that he shot him. In support of this argument, appellant points to the testimony of Nikki Marriott that appellant threatened to "beat his ass" and to put Alex, Nikki, and her friends in wheelchairs. (Tr. 576.) Appellant claims that such statements, while admittedly unkind, do not demonstrate intent to kill but, rather, showed that appellant merely wanted to fight with Alex.
As discussed previously, appellant's conduct in arranging to have the victims brought to him, getting a gun, waiting at the apartment complex for the victims to arrive, and almost immediately opening fire, demonstrated prior calculation and design. Appellant's conduct in running after Chad Damron, getting his gun unjammed, and firing additional shots at Chad, was evidence of a course of conduct involving the purposeful killing or attempt to kill two or more persons. The jury did not lose its way in finding prior calculation and design or the specification that the aggravated murder was part of a course of conduct involving the purposeful killing or attempt to kill two or more persons.
The first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant contends the trial court erred in refusing appellant's request for an instruction on the lesser-included offense of murder. Murder, R.C. 2903.02, is a lesser-included offense to aggravated murder, R.C. 2903.01(A). State v. Mason (1998), 82 Ohio St.3d 144, 161. Yet "[e]ven though an offense may be statutorily defined as a lesser-included offense of another, a charge on such lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense." State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus. Not every case requires that the lesser charge be given. There must be sufficient evidence admitted at trial to allow the jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included offense. State v. Shane (1992), 63 Ohio St.3d 630.
Here, appellant claims there was conflicting evidence about appellant's knowledge about how Alex came to the Woodbury apartment complex. As stated previously, however, there was no conflict about the essential contention that appellant told Nikki Marriott (by threat or otherwise) to get Alex to the Woodbury apartment complex under the guise of going to a party. While the defense may have impeached Nikki Marriott's credibility about whether she was threatened, there was sufficient evidence presented by the state to show that appellant used Nikki to deceive Alex into going to the apartment complex where appellant was planning to kill him. As discussed previously, there was also ample evidence to support the element of prior calculation and design. The jury would not have reasonably rejected the greater offense to find appellant guilty of murder. See State v. Wilson (1996), 74 Ohio St.3d 381, 394-395 (where evidence of prior calculation and design was overwhelming, the trial court did not err in refusing to instruct on murder as lesser-included offense). Thus, the trial court did not err by failing to instruct the jury on the lesser-included offense of murder. See, also, Goodwin, at 345-346.
Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.