The STATE of Ohio, Appellee,

v.

GARRIS, Appellant.

[Cite as *State v. Garris* (1998), 128 Ohio App.3d 126.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–98–2.

Decided June 3, 1998.

*William T. Goslee,* Bellefontaine City Prosecutor, for appellee.

*Bridget D. Hawkins,* for appellant.

THOMAS F. BRYANT, Judge.

This appeal, submitted on the accelerated docket, has been considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12(5), we have elected to render decision by written opinion.

Ronald Garris appeals from the judgment entered in the Bellefontaine Municipal Court, Logan County, convicting him of driving while under the influence of alcohol and/or a drug of abuse ("OMVI") pursuant to Bellefontaine City Ordinance 333.01(a)(1).[1] Garris was sentenced to serve one year in the Logan County Jail and ordered to pay a fine of $750.

---

1. The Bellefontaine city ordinance parallels R.C. 4511.19(A)(1).

Garris raises two assignments of error:

"I. The trial court erred in denying the defendant assigned counsel, thereby denying the defendant-appellant his right to a fair trial in violation of Section 19, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendment[s] to the United States Constitution.

"II. The trial court lacked jurisdiction to try and convict the appellant without a jury where the record does not include a written waiver of the appellant's right to a jury trial."

Though Garris's first and second assignment of error raise separate procedural and constitutional issues, right to counsel and right to a jury trial, the resolution of these assignments is contingent on the content of the information provided to Garris at his initial appearance before the municipal court on November 20, 1997. The assignments will therefore be discussed together.

The city of Bellefontaine ("the city") sought and was granted leave to supplement the record with Garris's initial appearance transcript. Therein, the city argues that it is apparent that Garris was fully advised of his right to counsel and his right to a jury trial. Accordingly, the city contends that when Garris appeared for trial on December 22, 1997 without counsel and without having filed a jury demand, he impliedly waived both. Parts of the initial appearance transcript provided to us, however, lead us to a different conclusion.

Garris was arrested for OMVI during the early morning hours of November 20, 1997. The record indicates that later the same morning, Garris appeared before the Bellefontaine Municipal Court on five traffic offenses, including the OMVI charge.

The first portion of the record transcribed indicates that the judge, while addressing another person charged with persistent disorderly conduct, advised the courtroom audience to "pay careful attention to this explanation of legal rights that I make to Mr. Wilt." The judge explained that because Wilt's charge carried a "potential jail sentence," "in any case such as this, you have the right to a jury trial in this court if you desire one, and you have the right to be represented by an attorney. If you need additional time to speak to an attorney before you enter your plea today, then you have the right to a continuance of this hearing in order to talk to your attorney. And, finally, if you wish to be represented by an attorney but you don't have the funds to hire your own attorney, you have the right to have an attorney appointed to represent you by the Court if the Court is satisfied that you are indigent."

The proceedings then continued with Wilt, but no transcription of those proceedings is part of the record before us. The transcript of proceedings

provided to us concerning Garris begins when Garris's name is called. The "clerk" read the charges to Garris, and the court then inquired of Garris:

"Q Sir, do you understand what you've been charged with?

"A Yes, sir. .

"Q Do you understand your legal rights as I explained them earlier today?

"A Yes, sir.

"Q Are you prepared to enter a plea at this time?

"A Yes, sir.

"Q What plea?

"A Not guilty."

The above constitutes the entire dialogue between the judge and Garris prior to Garris's entering his plea. It is not clear from this record that Garris was present when the court advised Wilt of his rights. Garris's affirmative response that he did hear his "legal rights" as were stated earlier by the judge reveals nothing about what Garris thought he heard. The procedure implemented by the trial court may have expedited the process of initial appearance, but it failed to provide a record from which this reviewing court may determine that any person other than Wilt heard proper information about his rights in court.

After Garris pleaded not guilty, the court did not inquire whether Garris wanted a court-appointed attorney to assist him in his defense. Rather, the court proceeded to set a trial date for December 22, 1997 and question Garris about his financial ability to make bail.

It should be noted that when discussing bail with Garris, the trial court noted that Garris was facing his fourteenth OMVI charge. This was even a factor cited by the trial court when deciding to set a high bond. Nevertheless, even though the trial judge appears to have been aware of Garris's prior offenses, he did not inform Garris of the possible punishment associated with his present OMVI offense, his third within six years. Specifically, the court did not advise Garris that if convicted of the OMVI charge, he could be incarcerated for a minimum of thirty days in jail or up to a maximum of one year, the punishment associated with a conviction of OMVI with two prior offenses within six years. Bellefontaine Ordinances 333.99(b)(3); see, also, R.C. 4511.99(A)(3)(a).

On the day of trial, Garris requested court-appointed counsel and a jury trial. The trial court denied both requests, conducted a bench trial without counsel, and found Garris guilty of OMVI, sentencing him to one year in jail.

At a defendant's initial appearance, the court "shall inform the defendant: (1) Of the nature of the charge against him; * * * [and] (5) Of his right, where

appropriate, to jury trial and the necessity to make demand therefor in petty offense cases." Crim.R. 5(A). Furthermore, where as here, Garris was called upon to enter a plea at his initial appearance without the assistance of counsel, *"the judge or magistrate shall cause him to be informed* and shall determine that he understands" certain enumerated rights. (Emphasis added.) Crim.R. 10(C).

 Here, Garris was not fully informed of his rights as required by Crim.R. 5(A), 10(C), and 11(D). Generally, when one pleads not guilty at initial appearance, noncompliance with the initial appearance rules would appear nonprejudicial. See *State v. Davis* (1991), 62 Ohio St.3d 326, 349, 581 N.E.2d 1362, 1381. The reasoning is that an uninformed not guilty plea is far less harmful than an uninformed guilty or no contest plea. Where, however, as here, the trial court denied Garris's subsequent request for court-appointed counsel and a jury trial on the day of trial, the failure to comply with the initial appearance rules is prejudicial.

 First, Crim.R. 5(A)(1) requires a defendant to be informed of the "nature of the charge against him." This must be more that having a clerk read the charges aloud to the defendant at his initial appearance and asking the defendant whether he understood what the clerk said. At the very least, a court must also advise the defendant of the possible punishment associated with his charges. *Von Moltke v. Gillies* (1948), 332 U.S. 708, 724, 68 S.Ct. 316, 323–324, 92 L.Ed. 309, 321 (where the United States Supreme Court stated that a waiver of counsel was valid only where, among other things, the defendant has knowledge of "the range of allowable punishments"); see, also, *State v. Bayer* (1995), 102 Ohio App.3d 172, 179, 656 N.E.2d 1314, 1318, and *State v. Grimes* (1984), 17 Ohio App.3d 71, 72, 17 OBR 126, 127–128, 477 N.E.2d 1219, 1221. When an accused faces trial without the assistance of counsel and does not expressly waive his right to counsel on the record as required by Crim.R. 44(C), no reviewing court can infer that such right was waived when the defendant was not made fully aware of the "dangers inherent in self-representation," for instance, the danger of losing the case and serving any time in jail. *State v. Ebersole* (1995), 107 Ohio App.3d 288, 294, 668 N.E.2d 934, 938.

Here, Garris was never advised that if convicted of OMVI he could spend one year in jail. This failure to comply with Crim.R. 5(A) prejudiced Garris, as he was unable to make an intelligent and informed decision as to the necessity for the assistance of counsel. *Bayer,* 102 Ohio App.3d at 179, 656 N.E.2d at 1318; *State v. Orr* (1985), 26 Ohio App.3d 24, 25, 26 OBR 192, 193–194, 498 N.E.2d 181, 183.

Crim.R. 5(A)(5) requires that the court advise a defendant upon initial appearance "[o]f his right, where appropriate, to jury trial and the necessity to make demand therefor in petty offense cases." On the day Garris was arraigned, the

trial court did state to all attending defendants collectively that in any case that carries with it a "potential jail sentence" that "you have the right to a jury trial in this court if you desire one." The court did not state, however, that it would be necessary for a defendant to "make a demand therefor" prior to trial as required in Crim.R. 5(A)(5). Nevertheless, when Garris appeared for his trial and asked the court where the jury was, the court advised Garris, "If you wanted a jury, you've got to put on a jury demand before the day of trial." Accordingly, the failure of the trial court to fully inform Garris of his responsibility to demand a jury trial prior to the date of trial violated Crim.R. 5(A)(5), and there is no evidence of Garris's knowledge shown by the record to serve as a foundation upon which an implied waiver of a jury trial might be based.

The trial court ultimately sentenced Garris to one year in jail, apparently because Garris had two prior OMVI convictions within six years of this case. However, any offense that carries with it a possible incarceration of over six months is no longer a "petty offense," but, rather, is a "serious offense" as defined in Crim.R. 2. *State v. Cheadle* (1986), 30 Ohio App.3d 253, 30 OBR 412, 507 N.E.2d 426. Therefore, because Garris was charged with a serious offense, his desire to have a jury trial is presumed unless expressly waived. See Crim.R. 23(A). Moreover, where a defendant has either exercised a demand for a jury trial or by the nature of the offense is presumed to desire a jury trial, the defendant may not be tried without a jury unless he expressly waives his right to a jury trial on the record as provided by R.C. 2945.05. Here, no such waiver is in the record.

 "A judgment of conviction is void if rendered by a court having no jurisdiction" to enter the judgment. *State v. Brock* (1996), 110 Ohio App.3d 656, 666, 675 N.E.2d 18, 24. Where, as here, an accused faces a "serious offense" and is tried without counsel and without a jury, the failure of the trial court to obtain a waiver of counsel, or an express waiver of jury trial pursuant to R.C. 2945.05, divests the trial court of jurisdiction to conduct the trial. *State v. Harris* (1991), 73 Ohio App.3d 57, 64, 596 N.E.2d 563, 568 (no waiver of a jury trial). Therefore, as the trial court's judgment is void *ab initio,* no double jeopardy attaches, the judgment of the trial court is reversed, and the cause is remanded with instructions to proceed as if no plea had been entered. *Brock,* 110 Ohio App.3d at 666, 675 N.E.2d at 24; see, also, *United States v. DiFrancesco* (1980), 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328, 341–342. Garris's first and second assignments of error are sustained.

*Judgment reversed*
*and cause remanded.*

SHAW, P.J., and EVANS, J., concur.