JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Harold Kennedy ("appellant") appeals from the trial court's decision finding him guilty of murder and attempted murder. Having reviewed the arguments of the parties and the pertinent law, we affirm in part, reverse in part and remand.
 I. {¶ 2} According to the record, on May 15, 2003, the Cuyahoga County Grand Jury returned a three-count indictment against appellant. Count one charged appellant with aggravated murder in violation of R.C. 2903.01(A)(1). Count two charged appellant with attempted aggravated murder in violation of R.C. 2903.01(A)(1) and 2923.02. Counts one and two both contained three- and five-year firearm specifications in accord with R.C. 2941.145 and2941.146. Count three charged appellant with having a weapon while under a disability in violation of R.C. 2923.13. A jury trial commenced on July 29, 2003, and on August 6, 2003, the jury returned its verdict.
 {¶ 3} The jury found appellant not guilty of aggravated murder as charged in count one, but guilty of the lesser included offense of murder in violation of R.C. 2903.02. Similarly, the jury found appellant not guilty of attempted aggravated murder as charged in count two, but guilty of the lesser included offense of attempted murder in violation of R.C. 2903.02 and 2923.02. The jury found appellant guilty with respect to all of the firearm specifications on both counts. In addition, the trial court found appellant guilty of having a weapon while under a disability.
 {¶ 4} On August 6, 2003, the trial court held a sentencing hearing. On count one, the court imposed a sentence of fifteen years to life, plus three years for the first firearm specification and an additional five years for the second separate firearm specification, all to be served consecutive to the ten-year sentence on count two. With respect to count two, the court imposed a fine of $20,000, ten years' incarceration and three years for the first firearm specification and five years for the second firearm specification to run consecutive to the "original sentence." The court further found that the two firearm specifications would merge. The court ran the prison time for counts one and two consecutively. Finally, on count three, the trial court sentenced appellant to one year of imprisonment, ordered to run consecutively to the other counts, for an aggregate sentence of thirtyone years to life. This appeal followed.
 {¶ 5} According to the facts, one of the victims, Raiketta Finnie, graduated from Collinwood High School in June 2002[1] and began dating appellant the same month.[2]
Raiketta has known appellant, also known to her as "Dude," since the ninth grade. Soon after the two of them began dating, Raiketta took out a car loan to purchase a 1998 Chevy Tahoe for appellant.[3] Raiketta purchased the truck in her name because appellant did not have sufficient credit to purchase it himself. They agreed that once Raiketta purchased the truck, appellant would make the payments; however, appellant only made a few payments on the truck. His last payment was in November 2002.[4] Appellant and Raiketta ended their relationship in February 2003.[5]
 {¶ 6} Appellant eventually stopped making payments on the truck; however, he still had possession of it.[6]
 {¶ 7} In April 2003, Raiketta and her best friend, Ebony Strickland, went to the Cleveland Police Department to file a report because appellant still had possession of the truck and was not making payments of any kind. After Raiketta and Ebony went to the police department, they noticed that they were being followed by appellant.[7] Raiketta pulled her car into the parking lot at Ebony's apartment and the girls got out of the car. Appellant exited his vehicle and approached the girls as they were walking up to the apartment building.[8]
 {¶ 8} Appellant began screaming at Raiketta and they started physically fighting.[9] Appellant was trying to hold Raiketta down on the ground, but she escaped his hold and got to her feet. During the struggle, Raiketta dropped her purse, which contained the title to the truck, on the ground. Appellant then took Raiketta's purse and left the area.[10] The girls went up to Ebony's apartment. Appellant called Ebony's cell phone and threatened to kill Raiketta if she did not leave him alone.[11] Appellant also told Raiketta that he had a gun in his truck. When Raiketta's purse was later returned to her, the truck title was missing from her purse and appellant still had possession of the truck. Later, toward the end of April, Raiketta learned that the truck was in the police impound lot, and she finally got the truck back in her possession.
 {¶ 9} On May 2, 2003, Raiketta drove her truck to the hair salon. She was getting her hair done with Ebony and three of her other friends. While they were inside the salon, appellant's cousin, Cynthia Pitts, and other individuals entered the salon and told Raiketta to return appellant's belongings that were still inside of the truck.[12] Raiketta opened the door to the truck for them. While speaking on a cell phone, appellant's relatives removed various objects, and appellant's aunt reached underneath the driver's seat, lifted up the carpet, and removed a gun.[13]
 {¶ 10} The next evening, on May 3, 2003, Raiketta drove her truck to a basketball game at Kennedy High School with her friends. During the game, Desarae Green, the mother of appellant's child, who was also at the game, made menacing gestures toward Raiketta.[14] After leaving the game, Raiketta stopped at a traffic light. Desarae and her friends, who were also at the stoplight, threw a bottle, some sticks, and another object at Raiketta's truck.[15] Desarae also rear-ended Raiketta's truck, causing Raiketta to hit the car in front of her. Shortly thereafter, Raiketta exchanged phone numbers and insurance information with the pregnant woman she hit. The girls left and drove to Romanica Gilham's Ansel Road house. Romanica is Ebony's sixteen-year-old cousin.
 {¶ 11} While the girls were on their way to Romanica's house, Raiketta called Cynthia Pitt's cell phone trying to reach Desarae.[16] Raiketta and Desarae were going to fight later that night at Euclid Creek.[17] Later that evening, Desarae arrived at Romanica's house with about six other girls. The seven girls exited the car and another car pulled up behind Desarae, but no one exited that car.[18] At that point, Raiketta and Desarae started physically fighting on the street near Romanica's house. Several other people became involved in the fight. Appellant walked up to the area where the girls were fighting with a gun in his pocket.[19] Appellant began firing his gun toward the porch where others were standing.[20]
 {¶ 12} Raiketta and Romanica heard several gunshots. The next thing she knew, Raiketta had been shot in the pelvis.[21]
Raiketta fell to the ground and rolled over. As she rolled over, she saw Ebony lying on the ground, bleeding and coughing up blood.[22] Ebony was pronounced dead upon arrival at the hospital. The doctor was unable to remove the bullet from Raiketta's pelvic area because it was too close to her vital areas. The day after the shooting, the police interviewed Desarae and Cynthia Pitts.[23]
 II. {¶ 13} Appellant's first assignment of error states the following: "The trial judge failed to strictly follow the provisions of the Ohio Revised Code and the Ohio Rules of Criminal Procedure, relating to the voluntary waiver of the defendant-appellant's waiver of his right to trial by jury on count three of the indictment, having a weapon while under a disability."
 {¶ 14} The right to trial by jury in felony offenses can be waived by the defendant alone before trial or during trial with the consent of the court, pursuant to Crim.R. 23(A).[24]
R.C. 2945.05 precludes a jury waiver without a written request signed by the defendant personally. Without a written waiver of the defendant's right to a jury trial, the common pleas court lacks jurisdiction to try the defendant without a jury on felony charges. State v. Harris (1991), 73 Ohio App.3d 57; State v.Edwards (1995), 107 Ohio App.3d 783.
 {¶ 15} R.C. 2945.05; "Defendant may waive jury trial," states the following:
{¶ 16} "In all criminal cases pending in courts of record inthis state, the defendant may waive a trial by jury and be triedby the court without a jury. Such waiver by a defendant, shallbe in writing, signed by the defendant, and filed in said causeand made a part of the record thereof. It shall be entitled inthe court and cause, and in substance as follows: "I ____,defendant in the above cause, hereby voluntarily waive andrelinquish my right to a trial by jury, and elect to be tried bya Judge of the Court in which the said cause may be pending. Ifully understand that under the laws of this state, I have aconstitutional right to a trial by jury."
 {¶ 17} "Such waiver of trial by jury must be made in opencourt after the defendant has been arraigned and has hadopportunity to consult with counsel. Such waiver may be withdrawnby the defendant at any time before the commencement of thetrial."
 {¶ 18} (Emphasis added.)
 {¶ 19} In the case at bar, the court failed to file a timely written waiver of a jury trial concerning count three, having a weapon while under a disability charge. There was no oral discussion concerning this waiver on the record in the case sub judice, nor is there an entry on the docket indicating a written waiver of appellant's right to a trial by jury prior to proceeding to trial. The only reference in the record to count three of the indictment is a reference at side bar, outside the hearing of the jury, to bifurcate count three. Both parties apparently agreed to this procedure.[25]
 {¶ 20} Moreover, the state agreed and conceded in its brief that the trial court did not comply with the requirements of R.C.2945.05, as it relates solely to this first assignment of error regarding only count three of the indictment.[26] We find merit in appellant's argument regarding his first assignment of error.
 {¶ 21} Appellant's first assignment of error is sustained.
 III. {¶ 22} Appellant's second assignment of error states: "The trial court erred in permitting the introduction of hearsay testimony which implicated the defendant-appellant, Harold Kennedy, in an unproven, unrelated shooting incident."
 {¶ 23} Appellant argues that the trial court erroneously allowed hearsay testimony implicating him in an unrelated shooting incident. We find this argument to be without merit. The evidence in question was admissible on several grounds. The witness's reference to the prior shooting involving the Chevy Tahoe was in response to a question posed by appellant's attorney on cross-examination as to why the witness, Raiketta, filed a police report concerning appellant's unauthorized use of her truck in April 2003.[27] The trial transcript between appellant's trial counsel and witness Raiketta Finnie indicates that the following exchange took place:
{¶ 24} "A. It happened the same day. I went and reportedunauthorized use same day as the shooting, not the shooting ofme, the shooting of another vehicle.
 {¶ 25} "Q. Okay, thank you. Ma'am, let's talk aboutunauthorized use of a white truck. When you called the police,what did you tell them?
 {¶ 26} "A. I went to the police station.[28] * * *
{¶ 27} "Q. He did the shooting?
 {¶ 28} "A. Yes."[29]
 {¶ 29} The reference to this prior shooting first came out on cross-examination, and appellant's trial counsel inquired further on the issue. Therefore, appellant opened the door for the prosecutor to question the witness regarding the prior shooting on redirect examination. Raiketta Finnie merely told the jury what she herself told the police department when she filed a police report concerning the unauthorized use of her truck.[30]
 {¶ 30} In addition, the contested testimony does not constitute inadmissible "other acts" testimony. Evid.R. 404(B) provides:
{¶ 31} "(B) Other crimes, wrongs or acts. — Evidence of theother crimes, wrongs, or acts is not admissible to prove thecharacter of a person in order to show that he acted inconformity therewith. It may, however, be admissible for otherpurposes, such as proof of motive, opportunity, intent,preparation, plan, knowledge, identity, or absence of mistake oraccident."
 {¶ 32} (Emphasis added.)
 {¶ 33} The evidence in the case at bar was offered as proof of identity and opportunity, which is permitted by Evid.R. 404(B). Appellant's involvement was relevant to demonstrate that he had access to a weapon and was recently involved in a shooting, which tends to establish him as the shooter on the day in question.
 {¶ 34} We find no error in the trial court's admission of the statement in question. Furthermore, assuming arguendo that there was error, it would have only been harmless error. The contents of the statement were in response to a question posed by appellant's own counsel. In addition, appellant's counsel inquired further on the issue and, therefore, opened the door for the state to question the witness regarding the shooting on redirect. Moreover, the contested testimony does not constitute inadmissible "other acts" testimony. The actions of the trial court were proper; the trial court did not err in permitting said testimony.
 {¶ 35} Appellant's second assignment of error is overruled.
 IV. {¶ 36} Appellant's third assignment of error states the following: "The trial judge erred by accusing the principle defense witness, in the presence of the jury, of giving perjured testimony, and by detaining the same witness in the courtroom, in the presence of the jury, during the course of trial proceedings."
 {¶ 37} Appellant argues that the trial judge's actions were improper with regard to defense witness Desarae Green. We do not find merit with this argument. The only admonition the trial court made to witness Green in the presence of the jury appears on page 1030 of the trial transcript.
{¶ 38} "THE COURT: Okay. Miss Green, you want to resume thestand, please? Miss Green, the court has conferred with counselwith reference to your testimony. You need to be made aware ofthe fact that perjury is a punishable offense. You understandthat?
 {¶ 39} "THE WITNESS: Yes."
 {¶ 40} At that time, the trial court simply informed the witness that perjury is a punishable offense. This admonition was made after it was clear to the jury, through the prosecutor's previous questions regarding the witness's cell phone records, that the witness was lying. Moreover, the witness essentially recanted her earlier testimony when confronted with her cell phone records.
{¶ 41} "Q: But, you indicated under your testimony earliertoday, when I was asking you questions, that you didn't talk tohim and that you hadn't placed any phone calls and that he hadn'tplaced any phone calls to you and that Cynthia Pitts didn't makeany phone calls and you were all in the same car. Do you remembertelling the members of the jury that you didn't make any phonecalls?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. Now, you've changed, right, and did make phonecalls?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. You did receive phone calls?
 {¶ 46} "A. Yes."[31]
 {¶ 47} The evidence in the record demonstrates that the trial court acted properly in regard to its conduct with witness Green. Appellant did not produce any evidence indicating unfair prejudice by the trial court.
 {¶ 48} Appellant's third assignment of error is overruled.
 V. {¶ 49} Appellants fourth assignment of error states: "The trial court erred by entering judgment of convictions and by sentencing the defendant-appellant on two related counts committed with the same animus."
 {¶ 50} Appellant claims that the offenses of murder and attempted murder are allied offenses of similar import and were committed with the same animus. We find this argument to be without merit.
 {¶ 51} R.C. 2941.25 prohibits an offender from being convicted of two or more allied offenses of similar import. R.C.2941.25 governs multiple counts and states the following:
{¶ 52} "(A) Where the same conduct by defendant can beconstrued to constitute two or more allied offenses of similarimport, the indictment or information may contain counts for allsuch offenses, but the defendant may be convicted of only one.
 {¶ 53} "(B) Where the defendant's conduct constitutes two ormore offenses of dissimilar import, or where his conduct resultsin two or more offenses of the same or similar kind committedseparately or with a separate animus as to each, the indictmentor information may contain counts for all such offenses, and thedefendant may be convicted of all of them."
 {¶ 54} (Emphasis added.)
 {¶ 55} The two-part test for determining whether or not two offenses are allied offenses of similar import was set forth inState v. Blankenship (1988), 38 Ohio St.3d 116. InBlankenship, the Supreme Court of Ohio set forth a two-tiered test to determine whether two crimes with which a defendant is charged are allied offenses of similar import. First, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. Secondly, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes are committed separately or that there is a separate animus for each crime, the defendant may be convicted of both offenses.
 {¶ 56} Murder is defined in R.C. 2903.02(A) as purposely causing the death of another. "Purposely" is defined in R.C.2901.22(A) as follows:
{¶ 57} "(A) A person acts purposely when it is his specificintention to cause a certain result, or, when the gist of theoffense is a prohibition against conduct of a certain nature,regardless of what the offender intends to accomplish thereby, itis his specific intention to engage in conduct of that nature."
 {¶ 58} Compare this to the corresponding Revised Code section, R.C. 2923.02(A), attempted murder:
{¶ 59} "(A) No person, purposely or knowingly, and whenpurpose or knowledge is sufficient culpability for the commissionof an offense, shall engage in conduct that, if successful, wouldconstitute or result in the offense."
 {¶ 60} When one compares the elements of the two crimes, it is apparent that one could commit attempted murder without also committing murder. Therefore, these crimes are not of similar import.
 {¶ 61} Appellant's fourth assignment of error is overruled.
 VI. {¶ 62} Appellant's fifth assignment of error states: "The trial judge erred by imposing consecutive sentences and the explanation justifying these sentences was inadequate."
 {¶ 63} An appellate court will not reverse a trial court on sentencing issues unless the defendant shows, by clear and convincing evidence, that the trial court has erred. R.C.2953.08(G)(1). Appellant claims that the trial court erred in its imposition of consecutive sentences and its explanation; we do not
 {¶ 64} find this to be the case. R.C. 2929.12(A) states the following:
{¶ 65} "(A) Unless otherwise required by section 2929.13 or2929.14 of the Revised Code, a court that imposes a sentenceunder this chapter upon an offender for a felony hasdiscretion to determine the most effective way to comply with thepurposes and principles of sentencing set forth in section2929.11 of the Revised Code. In exercising that discretion,the court shall consider the factors set forth in divisions (B)and (C) of this section relating to the seriousness of theconduct and the factors provided in divisions (D) and (E) of thissection relating to the likelihood of the offender's recidivismand, in addition, may consider any other factors that arerelevant to achieving those purposes and principles ofsentencing."
 {¶ 66} (Emphasis added.)
 {¶ 67} The trial court must comply with the mandates of R.C.2929.14(E)(4) and make certain findings on the record when it imposes consecutive sentences. R.C. 2929.14(E)(4) states the following:
{¶ 68} "(4) If multiple prison terms are imposed on anoffender for convictions of multiple offenses, the court mayrequire the offender to serve the prison terms consecutively ifthe court finds that the consecutive service is necessary toprotect the public from future crime or to punish the offenderand that consecutive sentences are not disproportionate to theseriousness of the offender's conduct and to the danger theoffender poses to the public, and if the court also finds any ofthe following:
 {¶ 69} "(a) The offender committed one or more of the multipleoffenses while the offender was awaiting trial or sentencing, wasunder a sanction imposed pursuant to section 2929.16, 2929.17, or2929.18 of the Revised Code, or was under post-release controlfor a prior offense.
 {¶ 70} "(b) At least two of the multiple offenses werecommitted as part of one or more courses of conduct, and the harmcaused by two or more of the multiple offenses so committed wasso great or unusual that no single prison term for any of theoffenses committed as part of any of the courses of conductadequately reflects the seriousness of the offender's conduct.
 {¶ 71} "(c) The offender's history of criminal conductdemonstrates that consecutive sentences are necessary to protectthe public from future crime by the offender."
 {¶ 72} R.C. 2929.14(E) (4) requires the trial court to make at least three findings prior to sentencing an offender to consecutive sentences. State v. Bolton (Feb. 24, 2000), Cuyahoga App. No. 75865.
 {¶ 73} In the case sub judice, the trial court stated the following:
{¶ 74} "This Court finds that consecutive sentences arenecessary to protect the public from future crimes and to punishthe offender and that consecutive sentences are notdisproportionate to the seriousness of the offender's conduct andto the danger the offender poses to the public.
 {¶ 75} "The Court further finds that the offender committedmultiple offenses while the offender was under a court sanctionwhich was imposed in a prior case, causing him to be under adisability.
 {¶ 76} "The Court further finds that the harm caused by themultiple offenses was so great and unusual that no single prisonterm for any of the offenses committed as part of a single courseof conduct adequately reflects the seriousness of the offender'sconduct."[32]
 {¶ 77} The transcript demonstrates that the trial court made all of the necessary findings required by R.C. 2929.14(E)(4).
 {¶ 78} Additionally, we find appellant's argument that the trial court failed to justify the sentence proportionately to be without merit. Ohio case law does not support appellant's proposition. In State v. Haamid, Cuyahoga App. Nos. 80161 and 80248, 2002-Ohio-3243, the court recognized the impracticality of requiring courts to engage in a comparison with sentences from other similar crimes.[33]
 {¶ 79} The evidence in the record demonstrates that the trial court's actions were proper. Moreover, appellant has an extensive criminal history, did not respond favorably in the past to nonprison sanctions, has an alcohol and drug problem, and has failed to demonstrate any genuine remorse in this case.
 {¶ 80} Appellant's fifth assignment of error is overruled.
 {¶ 81} Judgment affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., concurs; McMonagle, P.J., concurs in judgment onlyin part and dissents in part with separate concurring anddissenting opinion.
[1] Tr. 407.
[2] Tr. 408.
[3] Tr. 408-409.
[4] Tr. 409.
[5] Tr. 408, 410.
[6] Tr. 410-411.
[7] Tr. 413.
[8] Tr. 413.
[9] Tr. 414.
[10] Tr. 414.
[11] Tr. 414.
[12] Tr. 420.
[13] Tr. 609.
[14] Tr. 423.
[15] Tr. 426, 523.
[16] Tr. 428.
[17] Tr. 429.
[18] Tr. 431, 708.
[19] Tr. 536, 537.
[20] Tr. 539, 1154, 1160.
[21] Tr. 443, 451, 452, 538.
[22] Tr. 443.
[23] Tr. 727.
[24] Rule 23. "Trial by jury or by the court (A) Trial by jury. — In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive inwriting his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney. In petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto." (Emphasis added.)
[25] Tr. 2-37. Voir Dire, July 28, 2003, Vol. 1.
[26] Appellee's brief, p. 8-9.
[27] Tr. 470.
[28] Tr. 471.
[29] Tr. 472.
[30] Tr. 508.
[31] Tr. 1038.
[32] Tr. 1325.
[33] Concurring opinion, Karpinski, J., "I concur with the majority opinion, but write to address argument appellant raises. The defense argues that the consecutive sentences are disproportionate to similar offenses. He cites R.C. 2929.11(B), which requires that a sentence for a felony `be reasonably calculated to achieve two overriding purposes,' one of which is that it be `consistent with sentences imposed for similar crimes committed by similar offenders.' (continued on next page)
"The defense did not, however, provide data to demonstrate that the sentence was inconsistent with other sentences for similar crimes by similar offenders. Nor did the prosecutor supply adequate data on this question, although the prosecutor did advise the trial judge what would be consistent with her previous sentences. I am not aware of any data base or record of sentences imposed that systematically arranges comparative information on similar offenses by similar offenders in Ohio. * * * Until that data is available and accessible, appellate courts will be able to address the principle of consistency only to a very limiteddegree." (Emphasis added.)
 CONCURRING AND DISSENTING OPINION