OPINION
{¶ 1} James R. Garrett ("Garrett") is appealing from his conviction for murder with a firearm specification. He assigns three errors for our consideration:
 [I.] Appellant received ineffective effective [sic] assistance of counsel.
 [II.] Appellant's conviction was against the manifest weight of the evidence.
 [III.] Appellant was denied due process of law as a result of cumulative errors throughout the trial. *Page 2 
 {¶ 2} Garrett was indicted on December 22, 2005, and charged with aggravated murder with a gun specification and illegal possession of a firearm in a liquor permit premises. He was acquitted of the illegal possession charge during his jury trial as the result of a motion made by trial counsel under Crim.R. 29(A). The jury found Garrett not guilty of aggravated murder with a firearm specification, but guilty of the lesser included offense of murder with a firearm specification.
 {¶ 3} We address the second assignment of error first to provide the factual background for the case.
 {¶ 4} On December 4, 2005, a fight started at the DR Lounge in the southern part of Columbus, Ohio. Jacques Davenport ("Davenport"), who had been fighting with a man known as Puma, was shot five times in the back and died as a result of the wounds. The question at trial was who shot Davenport in the back.
 {¶ 5} Suriedia Florida ("Florida") was one of the bar patrons that night. She testified that she knew both Davenport and Garrett, who was better known to her as "Butchy." She testified that Puma was a friend of Butchy's and that when Puma started fighting with Davenport, Butchy pulled a gun from his waistband and shot Davenport repeatedly. Then Butchy left the bar.
 {¶ 6} Firearm evidence at trial established that all seven shell casings collected at the scene of the shooting were from the same firearm. The autopsy established that Davenport died as a result of the gunshot wounds.
 {¶ 7} Keosha Patterson ("Patterson"), a friend of Garrett, testified that he was with Garrett at the DR Lounge when a fight broke out between "Puma," "Chip," "Red," and Davenport. When gunshots started, Patterson hit the floor. Patterson testified that *Page 3 
James Garrett did likewise. Patterson claimed that Garrett was not the shooter and that they both fled after the shooting stopped.
 {¶ 8} On cross-examination, Patterson acknowledged that his version of the facts had changed somewhat from the version he had given to police investigators earlier.
 {¶ 9} Garrett testified on his own behalf and gave a version of what happened which closely paralleled that recounted by Patterson. They were at the bar, a fight started, and someone started shooting. They hit the floor until the shooting stopped and then fled.
 {¶ 10} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. Id. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, syllabus paragraph two, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. SeeThompkins, at 387.
 {¶ 11} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, at 387. In so doing, the court of appeals, sits as a "`thirteenth juror'" and, after "`reviewing the entire *Page 4 
record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. (quoting State v. Martin [1983],20 Ohio App.3d 172, 175); see, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387.
 {¶ 12} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964), 120 Ohio App. 213, 217 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.")
 {¶ 13} See State v. Harris (1991), 73 Ohio App.3d 57, 63 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).
 {¶ 14} Applying this standard to the testimony presented at Garrett's trial, we cannot say that his conviction for murder with a gun specification is against the manifest weight of the evidence. Florida's testimony, if believed, was more than sufficient to support a finding of guilty. We cannot say that the testimony of Patterson and Garrett *Page 5 
was sufficiently more credible to require us to overturn the jury's verdict, given our limited weighing as the so-called thirteenth juror.
 {¶ 15} The second assignment of error is overruled.
 {¶ 16} The first assignment of error alleges that Mr. Garrett's trial counsel rendered ineffective assistance of counsel for purposes of theSixth and Fourteenth Amendments to the United States Constitution. The standard we are to apply in evaluating this assignment of error is set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Trial counsel's performance must have so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Stated somewhat differently, counsel's performance must be shown to have been deficient and that deficient performance must have prejudiced the defense to the point that the defendant was deprived of a fair trial. As a result, the defendant must show that, but for counsel's unprofessional errors, there was a reasonable probability the result of the trial would have been different.
 {¶ 17} Appellate counsel for Garrett sets forth several potential "unprofessional errors" allegedly made by trial counsel. They are: (1) failure to provide zealous representation based upon intimidation by the trial judge; (2) failure to make a post-verdict motion for a judgment of acquittal; (3) failure to play an "exculpable" 911 tape before the jury; (4) failure to timely move for a separation of witnesses; (5) failure to object to trial events which occurred while the defendant was not present; and (6) failure to request a jury charge for voluntary manslaughter.
 {¶ 18} Addressing each of these individually, the suggestion that counsel was somehow intimidated by the trial court is at best speculation. The trial court warned *Page 6 
counsel that counsel was talking so loud at side-bar conferences that jurors could possibly overhear the content of the conference. This warning could not conceivably have harmed the defendant or damaged the quality of his representation.
 {¶ 19} The trial court sustained a Crim.R. 29 motion as to the one charge against James Garrett and allowed the jury to decide Garrett's guilt or innocence as to the homicide-related charges. Garrett chose a defense of "I didn't do it" as opposed to "I was in a fit of rage." No basis for a voluntary manslaughter charge to the jury was in the evidence before the court, so counsel did not err in failing to pursue such a jury charge.
 {¶ 20} Given the testimony of Florida, no basis for a post-verdict motion for judgment of acquittal was present. Counsel did not have a professional lapse when counsel refrained from making such a motion.
 {¶ 21} Appellate counsel complains about the failure of trial counsel to play a 911 tape to the jury. The tape in question had both exculpatory and inculpatory content. Trial counsel could legitimately make a judgment call that more harm could come from playing the tape than good could potentially come from it. Such a judgment call would constitute trial strategy and not be considered as unprofessional error. Counsel did not have a professional lapse by any stretch of the imagination.
 {¶ 22} The failure to move for a separation of witnesses until part way through the trial also could not have harmed the defense. The state's witnesses really did not have overlapping content in their testimony, so the delay in moving for a separation of witnesses did not harm the defense.
 {¶ 23} Finally, appellate counsel asserts that the failure to involve Garrett in minimal interchange between trial counsel and the trial court somehow harmed the *Page 7 
defendant or denied him of due process. The record is devoid of facts which would demonstrate either.
 {¶ 24} No errors of trial counsel having been demonstrated, the first assignment of error is overruled.
 {¶ 25} Since we find no enumerated errors and no other errors are present, we overrule the third assignment of error.
 {¶ 26} All three assignments of error having been overruled, the judgment of the
Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
SADLER, P.J., and WHITESIDE, J., concur.
 WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 1