[Cite as *State v. Newton*, 2014-Ohio-1958.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellee,                  :

v.                                               :            No. 13AP-500
                                                             (C.P.C. No. 12CR-1462)

Nicholas J. Newton,                              :

     Defendant-Appellant.                 :            (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on May 8, 2014

---

*Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee.

*Yeura Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Defendant-appellant, Nicholas J. Newton ("appellant"), is appealing from his conviction on charges of aggravated murder with a firearm specification, robbery, carrying a concealed weapon, and tampering with evidence. He assigns three errors for our consideration:

> **First Assignment of Error:** Appellant was subjected to an illegal arrest on January 7, 2012. All evidence seized as a result thereof should have been suppressed pursuant to the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 14 of the Ohio Constitution.
>
> **Second Assignment of Error:** Appellant's conviction for aggravated murder was not supported by the sufficiency of the evidence.

**Third Assignment of Error:** Appellant's convictions on all counts were not supported by the manifest weight of the evidence.

{¶ 2} To fully understand the first assignment of error, an understanding of the pertinent facts is necessary. We, therefore, address the second and third assignments of error first.

{¶ 3} Sufficiency of the evidence is the legal standard applied to determine whether the case should have gone to the jury. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In other words, sufficiency tests the adequacy of the evidence and asks whether the evidence introduced at trial is legally sufficient as a matter of law to support a verdict. *Id.* "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks* at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal must be entered for the defendant. *See Thompkins* at 387.

{¶ 4} Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence. *Thompkins* at 387. In so doing, the court of appeals, sits as a " 'thirteenth juror' " and, after " 'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* (quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983)); *see also Columbus v. Henry*, 105 Ohio App.3d 545, 547-48 (10th Dist.1995). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387.

{¶ 5} As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, *see* [*State v.*] *DeHass* [10 Ohio

St.2d 230 (1967)], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). It was within the province of the jury to make the credibility decisions in this case. *See State v. Lakes* 120 Ohio App. 213, 217 (4th Dist.1964), ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness.")

{¶ 6} See *State v. Harris*, 73 Ohio App.3d 57, 63 (10th Dist.1991), (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight).

{¶ 7} The testimony at trial developed the following facts.

{¶ 8} Katrina Butts was walking home from a local market when she was approached by a man later identified as appellant. Appellant asked for a light for a cigarette, but Butts declined. As she walked further, she noticed appellant was following her.

{¶ 9} When she got to her home and was walking up the steps, a second man ran up and grabbed her purse. They struggled over the purse. Butts called for her boyfriend, Barry Windle, to help her. The two began searching for her purse which had been wrestled from her. While looking for her purse, they encountered appellant and began to question him about the theft of the purse. Appellant refused to answer and produced a rifle. Appellant then shot Windle, who died from the wound.

{¶ 10} In the early stages of the investigation of the shooting, the shooter's identity was not known. However, the rifle was found and eventually appellant's DNA was discovered on the stock of the rifle.

{¶ 11} Langston Garrett was learned to have been the man who wrestled with Butts and actually stole the purse. He became a witness for the government in Newton's trial. He testified that he and appellant discussed following Katrina Butts and taking her purse. Garrett fled after getting the purse, but heard gunshots while he ran away with the purse. Garrett claimed appellant later told him he shot someone on the day of the robbery.

{¶ 12} Sabrina Baker was a girlfriend of appellant's who also testified against him. She stated that appellant told her he shot someone, but claimed the shooting was accidental. Appellant claimed the person he shot had attacked him first.

{¶ 13} Putting this testimony together, appellant and Garrett conspired to steal the purse of Katrina Butts. While Garrett was running away with the purse, appellant shot a man who approached him trying to get information about the theft which had just occurred.

{¶ 14} Robbery for purposes of this case is defined by R.C. 2911.02, which reads:

> (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> (1) Have a deadly weapon on or about the offender's person or under the offender's control;
>
> (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
>
> (3) Use or threaten the immediate use of force against another.
>
> (B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
>
> (C) As used in this section:
>
> (1) "Deadly weapon" has the same meaning as in section 2923.11 of the Revised Code.
>
> (2) "Theft offense" has the same meaning as in section 2913.01 of the Revised Code.

{¶ 15} Garrett was fleeing immediately after stealing the purse, a theft offense. As defined by R.C. 2911.02, the robbery offense was still occurring. Appellant used force at that time by shooting Barry Windle. This made appellant also guilty of robbery.

{¶ 16} The shooting of Windle at point blank range was sufficient to support a guilty finding as to murder as defined by R.C. 2903.02(A) or (B). Those code sections read:

> (A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.
>
> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

{¶ 17} Since under the facts of this case appellant was guilty of robbery and murder, he was also guilty of aggravated murder as defined in R.C. 2903.01(B). R.C. 2903.01(B) reads:

> No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

{¶ 18} In short, the evidence was sufficient to support all the charges lodged against appellant.

{¶ 19} The second assignment of error is overruled.

{¶ 20} The third assignment of error asks us to reweigh the evidence as to the convictions. Given the testimony of Garrett and Baker, the identity of the shooter was sufficiently established. We cannot say the jury in any way lost its way in finding appellant to be the shooter. The facts surrounding the theft of the purse and the shooting were not in serious debate during the trial. The weight of the evidence clearly supported the convictions, given the legal standards we must apply. Those standards were set forth earlier.

{¶ 21} The third assignment of error is overruled.

{¶ 22} We now return to the first assignment of error and the facts developed in the context of the motion to suppress filed before trial.

{¶ 23} The rifle used to shoot Barry Windle was abandoned shortly after the shooting. Appellant has no right protected under the Fourth Amendment to the U.S. Constitution to abandoned property, including any DNA traces left on the rifle. The

motion to suppress focused solely on the obtaining of a DNA sample or samples from appellant to compare to the physical evidence.

{¶ 24} A DNA swab was obtained after a motor vehicle in which appellant was a passenger was stopped and the car's occupants detained. The testimony before the trial court judge indicated that the car was stopped because the driver violated a traffic law. Once the car was stopped, the driver was found to have no valid operator's license. Appellant was not the driver.

{¶ 25} The officers who stopped the vehicle claimed to have detected the odor of marijuana smoke coming from the vehicle. As a result, the officers wanted to search the car for controlled substances. Appellant and the other occupants were removed from the vehicle so the search could proceed.

{¶ 26} The resulting search found a loaded handgun under the driver's seat of the car. This led to all the occupants of the car being taken to the police station.

{¶ 27} Warrantless searches of motor vehicles are permitted when police have probable cause to believe that the motor vehicle contains contraband. *See* for instance *Carroll v. United States*, 267 U.S. 132 (1925) and the many cases which have followed it, including *Chambers v. Maroney*, 399 U.S. 42 (1970), *Collidge v. New Hampshire*, 403 U.S. 443 (1971) and *California v. Carneg*, 471 U.S. 386 (1985).

{¶ 28} The Supreme Court of Ohio has found that a police officer who recognizes the odor of burning marijuana coming from the interior of a motor vehicle has probable cause to search the interior of the vehicle. *See State v. Moore*, 90 Ohio St.3d 47, 2000-Ohio-10.

{¶ 29} The trial court appropriately analyzed this encounter as being a permissible detention for purposes of a search for drugs, followed by a series of arrests once the concealed firearm was found.

{¶ 30} The firearm was stuffed under the carpet under the driver's seat. It was most accessible to the persons in the backseat of the car. Appellant was in the backseat of the car, although on the passenger side. The weapon was more accessible to the passenger next to appellant. We cannot disagree with the trial court's finding probable cause to believe appellant possessed or aided and abetted in the possession of the concealed firearm.

{¶ 31} Possession means to have control over an object. The firearm was only a few feet away from appellant. The firearm was readily accessible to the person seated next to appellant. The firearm was also accessible to appellant, either through his asking for the man next to him to hand it to him or from appellant merely bending over to his left and grasping the firearm himself. Appellant had sufficient control over the firearm to support a finding of probable cause to believe he committed the offense of carrying concealed weapons in violation of R.C. 2923.12.

{¶ 32} R.C. 2923.12(A) reads, in part:

A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:

(1) A deadly weapon other than a handgun;

(2) A handgun other than a dangerous ordnance.

In short, police had probable cause to arrest appellant and to convey him to the police station. The arrest was lawful, so the DNA sample obtained was not the fruit of an illegal arrest.

{¶ 33} Once at the police station, appellant signed a form permitting the police to take a DNA swab. The evidence before the trial court supported the trial court's finding the consent to obtain a DNA sample was knowing, intelligent and voluntary.

{¶ 34} Under the circumstances, the DNA swab which linked appellant to the crime was legally obtained by police. The trial court did not err in overruling the motion to suppress.

{¶ 35} The first assignment of error is overruled.

{¶ 36} All three assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER, P.J., and BROWN, J., concur.